UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

LEONIDES SIERRA,

Defendant.

11-CR-1032-01 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On July 24, 2014, defendant Leonides Sierra was sentenced principally to a term of imprisonment of 228 months (19 years), following his April 18, 2013 guilty plea to participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). *See* Dkt. 1334 ("Sent. Tr."). The Court ordered Sierra's sentence to run consecutively to the undischarged portion of his New York State court sentence for murder. *See id.* at 52–58, 82–85; *see also* Dkt. 1233 ("Judgment") at 2.

On February 28, 2024, defense counsel moved for a reduction of Sierra's sentence to 168 months' imprisonment, pursuant to Amendment 821 of the Sentencing Guidelines, *see* Dkt. 2702 ("Def. Mtn."), having been appointed by the Court for this purpose, Dkt. 2693. On February 28, 2024, the Government filed a letter, agreeing that Sierra is eligible for, but opposing, a sentence reduction. Dkt. 2703 ("Gov't Mem."). Consistent with the parties' views, the Probation Department has determined that Sierra is eligible for a sentence reduction, insofar as, under Amendment 821, Sierra would no longer receive a "status points" upward adjustment to his criminal history, under U.S.S.G. § 4A1.1(e), based on his having committed the instant racketeering conspiracy offense while subject to a criminal justice sentence. Dkt. 2688.

All parties thus agree that under Amendment 821, Sierra's criminal history category, which was III at the time of sentencing, is now II; that his offense level remains level 34; and that his Guidelines range on Count Three would today be 168 to 210 months' imprisonment, rather than 188 to 235 months, the range calculated at the time of sentencing. The Court adopts the above calculations and finds Sierra eligible for a sentence reduction to no lower than 168 months' imprisonment.

Sierra's case, and sentencing, are memorable to the Court. The Court gave extended attention to the just sentence in what it identified as an unusually challenging case. On Sierra's present motion, the Court has carefully reviewed the record in this case, including its detailed assessment at the time of sentencing of the proper sentence as reflected in the transcript of the sentencing hearing, and counsel's recent thoughtful and helpful submissions. After considered attention, the Court declines to reduce Sierra's sentence based on Amendment 821.

That is so for these reasons. Sierra's sentencing was highly unusual. It called upon the Court to determine the appropriate sentence for a gang founder and leader who, from prison, had led a gang, the Bronx Trinitarios Gang, that had turned viciously and retributively violent, such that it was responsible for more than 10 murders, numerous attempted murders, countless acts of violence, and had caused "bloody, violent, ruthless mayhem." *See* Sent. Tr. 60–61. As the transcript of sentencing reflects, the Court's analysis turned on its assessment of various 18 U.S.C. § 3553(a) factors. Sierra had countenanced murderous and other brutal violence and had affirmatively authorized certain acts of violence, including a murder he had ordered not long before his December 2011 arrest in this case. *Id.* at 64. Sierra also authorized numerous acts of retributive violence within the prison system. *Id.* at 61–66. Sierra also countenanced the gang's prodigious narcotics distribution, and authorized the smuggling of narcotics into prison, which he

used as a means of control. *Id.* at 67–68. In these circumstances, the Court found the § 3553(a) factors of just punishment, promotion of respect for the law, and the need for the sentence to reflect the seriousness of the crime to demand the sentence imposed. *Id.* at 68–72. In fashioning the 228-month sentence, the Court also found centrally important the interest in incapacitation (public protection). Insofar as Sierra had committed his instant offense following a long criminal record—including the 1989 gunshot murder that had resulted in the state-court sentence he was then serving of 270 months' to life imprisonment—the Court was unable to conclude that any federal sentence could specifically deter Sierra, and discounted this factor as unimportant in Sierra's case. *Id.* at 72–73. Protection of the public, however, demanded a long prison sentence, because Sierra's history had shown a risk that he would commit further crimes, whether inside or outside prison. *Id.* at 73–74. Balancing these § 3553(a) factors against various mitigating factors, *id.* at 74–82, the Court found a sentence of 228 months—below the top of the Guidelines range sentence urged by the Government—to be the lowest that would fairly take account of the § 3553(a) factors, viewed as a whole, *id.* at 82–85.

In this considered assessment, the 2-level upward adjustment then-reflected in U.S.S.G. § 4A1.1(d) of the Sentencing Guidelines did not play any role whatsoever in the Court's determination of the just and reasonable sentence for Sierra. And the Sentencing Commission's recent narrowing of the circumstances in which that adjustment (now codified at § 4A1.1(e)) applies does not alter the Court's assessment of the proper sentence. On the contrary, viewing Sierra's criminal history as a whole, there is a substantial argument that the level III classification under the Sentencing Guidelines seriously understated Sierra's criminal history. As the corrected presentence report ("PSR") reflects, Sierra, before this prosecution, had seven sets of adult criminal convictions, culminating in his 1990 conviction for the 1989 gunshot

murder. *See* PSR ¶¶ 134–49 (listing convictions for sexual abuse, for petit larceny twice, for burglary three times, and for intentional murder and weapons possession). Yet, because of the age of these convictions, at Sierra's sentencing, only the murder yielded any criminal history points. As the Court's sentencing remarks reflected, it was the Court's assessment of the facts relating to Sierra's criminal history—that it was of varied and undeterred criminality, including the 1990 murder, and the commission of the racketeering conspiracy from state prison—that drove the Court's relevant assessments, including that specific deterrence of Sierra was not reliably attainable and that protection of the public was a vital interest demanding the lengthy sentence. *See* Sent. Tr. 72–74. The Guidelines' treatment of this history was of no moment to the Court's analysis. And the Sentencing Commission's recent amendment narrowing the reach of § 4A1.1(e) likewise does not disturb the Court's reasoning insofar as Sierra's criminal history bore on his just sentence.

The Court is mindful that although the sentence it imposed was within the applicable Sentencing Guidelines range, it would be above the Guidelines range that would apply today, given Amendment 821's narrowing of the reach of § 4A1.1(e). For two independent reasons, that does not support a reduction in Sierra's sentence.

First, given the unusual nature of Sierra's case, and that the Court's assessment of the proper sentence was driven by the application of § 3553(a) factors to the facts, as opposed to the range yielded by the Sentencing Guidelines, had the Guidelines range been materially lower, this case would have been apt for a variance above the Guidelines range. The Court has upwardly varied from time to time in idiosyncratic cases where the Guidelines did not adequately reflect aggravating factors. It did so in sentencing co-defendants of Sierra's. *See, e.g.*, *United States v. Jugo Cespedes, Manuel Geraldo, and Hargelis Vargas*, 11 Cr. 1032 (PAE), Dkt. 1761 at 11

(S.D.N.Y. July 30, 2015) (announcing intent to consider upward variances for three Trinitarios defendants on grounds that stabbing murder of Orlando Salgado, although qualifying as second-degree murder under the Guidelines, was "close to the line" of first-degree murder and unusually "bloodthirsty and savage"); *see also id.*, Dkt. 1821 at 38, 53–54 (transcript of October 29, 2015 sentencing) (imposing 300-month sentence on Geraldo, whose Guidelines range was 210-262 months imprisonment); *id.*, Dkt. 1861 (transcript of December 2, 2015 sentencing) (imposing 420-month sentence on Cespedes, whose Guidelines range reflecting two murders was 235–293 months imprisonment), *aff'd*, 687 F. App'x 101 (2d Cir. 2017). It has done so in other cases. *See, e.g.*, *United States v. Knowles*, 16 Cr. 5 (PAE), Dkt. 49 at 42–50, 60 (transcript of Dec. 6, 2016 sentencing) (imposing 60-month sentence where Guidelines range called for term of between 27–33 months for thief who hacked and sold copyrighted and confidential material where loss calculation did not reflect gravity of defendant's conduct and defendant was caught promising to resume scheme upon release), *aff'd*, 705 F. App'x 42 (2d Cir. 2017).[1]

Second, as the Government notes, Sierra's plea agreement was unusual. The product of apparently extended negotiations, it resulted in a 20-year cap on Sierra's potential prison term and agreement on a stipulated Guidelines range, the top of which approached that cap. *See* Gov't Mem. at 4. In assenting to those terms, the Government agreed to dismiss more serious counts that, upon conviction, would have yielded much higher Guidelines ranges (*e.g.*, for conspiracy to commit murder in aid of racketeering under 18 U.S.C. § 1959(a)(5)) and/or obliged Sierra to

---

[1] The sentences referenced in this paragraph were affirmed on appeal. *See United States v. Geraldo*, 687 F. App'x 101, 105–07 (2d Cir. 2017) (summary order) (affirming Geraldo's sentence as against challenges based on procedural and substantive unreasonableness, and affirming Cespedes's sentence as against a challenge based on substantive unreasonableness); *United States v. Knowles*, 705 F. App'x 42, 43 (2d Cir. 2017) (affirming Knowles's sentence as against a challenge based on substantive unreasonableness).

serve mandatory consecutive sentences (on two firearms counts brought under 18 U.S.C. § 924(c)(iii), each of which would have carried a separate mandatory consecutive prison term of 10 years). *See* Sent. Tr. 74 (noting that the Government agreed to dismiss such charges as a result of plea negotiations); *see also* Dkt. 539 at 71–72, 93–94 (fifth superseding indictment, charging Sierra with two counts under 18 U.S.C. § 924(c)(iii), and two counts of conspiracy to murder in aid of racketeering under 18 U.S.C. § 1959(a)(5)). It is very far from clear that the Government would have dropped the more serious counts and the firearms charges had the defense not stipulated to the 188-to-235-month Guidelines range. A strong indication that the Government would not have agreed to such terms in return for a plea to conduct yielding a sentencing range of 168 to 210 months is that, at sentencing, the Government took the unusual step of advocating for a sentence (235 months' imprisonment) at the top of the Guidelines range. *See* Sent. Tr. 21–23 (Government's statement at sentencing); *see also* Gov't Sentencing Mem. at 1 n.1 (noting that Chief of Criminal Division for United States Attorney's Office gave approval for Government to seek sentence at top of Guidelines range).

The Court, finally, has considered whether Sierra's conduct while incarcerated, and his health challenges, supports a reduction of his sentence, given the opportunity presented for such by Amendment 821. They do not. Sierra points to productive activities on his part, including mentoring and coaching other inmates, and amasses letters in support of his positive impact on others. *See* Def. Mtn. at 6; *id.*, Exs. A–I.[2] This conduct is quite commendable. The Government counters that, in less than three years since he was transferred from state to federal custody, Sierra has amassed 11 disciplinary sanctions, *see* Gov't Mem. at 4–5, a tabulation the Probation

[2] The Court has also considered a handwritten letter it received from Sierra on March 11, 2024, which similarly highlights the letters Sierra's counsel collected in support of his stated commitment to bettering himself and others while incarcerated. Dkt. 2704.

Department corroborates, *see* Dkt. 2688 at 3–4. Considering the assembled record, the Court does not find the new developments to materially alter its assessment at sentencing that the § 3553(a) factors, considered together, favor the sentence imposed.

The Court accordingly declines to modify Sierra's sentence. *See, e.g.*, *United States v. Diggs*, No. 21 Cr. 6184 (EAW), 2024 WL 797979, at *1 (W.D.N.Y. Feb. 22, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility "in view of the dangerousness of the offense conduct and [d]efendant's history and characteristics," such that the sentence initially imposed remains "necessary to comply with" the § 3553(a) factors); *United States v. Kozel*, No. 19 Cr. 460 (KMW), 2024 WL 694102, at *2 (S.D.N.Y. Feb. 20, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility, on ground that "the § 3553(a) factors and [defendant's] post-sentencing conduct weigh against a reduction"); *United States v. Elendu*, No. 20 Cr. 179-14 (DLC), 2024 WL 458643, at *3 (S.D.N.Y. Feb. 6, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility, based on his "egregious" criminal conduct, the "significant need for individual deterrence," and the fact that each of the § 3553(a) factors "continues to weigh against a reduction of his sentence"); *United States v. Toussaint*, No. 21 Cr. 247-2 (PAE), Dkt. 294 (S.D.N.Y. Mar. 5, 2024) (denying motion for sentence reduction under Amendment 821 despite defendant's eligibility, based on "incredibly serious" offense conduct including commission of $30+-million fraud on COVID-era loan programs, and fact that "the calculated Guidelines range did not play a meaningful role in the Court's assessment of the just and reasonable sentence," which the Court found necessary "to achieve just punishment and promote respect for the law").

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: March 12, 2024
New York, New York